

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAMILLE GUILTY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 06 C 3545 |
| vs. ) | |
| ) | Magistrate Judge Schenkier |
| LINDA S. McMAHON, acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER[1]

On December 17, 2003, plaintiff, Camille Guilty, filed an application for SSI, alleging a disability beginning June 1, 1998 (R. 15). The Agency found that plaintiff was not disabled, both initially and upon reconsideration. On November 1, 2005, plaintiff, represented by counsel, appeared at a hearing before an Administrative Law Judge ("ALJ") (*Id.*). At the hearing before the ALJ, plaintiff amended the onset date of her alleged disability to the time of her application, December 17, 2003 (R. 218). After the hearing, the ALJ issued a written decision, dated January 27, 2006, denying plaintiff SSI benefits (R. 14-22). Plaintiff filed a Request for Review, and on May 5, 2006, the Appeals Council denied the request, making the decision of the ALJ the final decision of the Commissioner.

Plaintiff timely filed a complaint in this Court seeking review of the administrative decision. Plaintiff now seeks summary judgment reversing the denial of her claim for Supplemental Security Income ("SSI") payments for an alleged disability or, in the alternative, a remand of the case to the

---

[1] On September 1, 2006, by consent of all the parties, the Executive Committee reassigned this case to this Court pursuant to Local Rule 73.1 and 28 U.S.C. § 626(c) to conduct all further proceedings, including the entry of final judgment (doc. # 13).

Administrative Law Judge for further proceedings. The Commissioner has filed a cross-motion for summary judgment to affirm the decision below. For the reasons that follow, the Commissioner's motion for summary judgment is denied (doc. #30) and plaintiff's motion for remand is granted (doc. #19). The Court reverses the decision of the Commissioner and remands this case for further proceedings consistent with this opinion.

## I.

The following facts are taken from the administrative record, the administrative hearing transcript, and the ALJ's written decision. We will set forth plaintiff's personal and medical history, followed by a summary of the administrative hearing testimony and the ALJ's written decision.

### A.

Plaintiff was born on December 11, 1957 and was 47 years old at the time of the hearing before the ALJ (R. 23, 191). Plaintiff lives with her daughter, son-in-law, and two grandchildren (R. 192). There is some ambiguity as to whether Ms. Guilty has an eleventh grade education (R. 191), or a ninth grade education (R.15). Plaintiff has previously been employed as a teacher's aide, day care aide, and home healthcare aide (R. 75, 80). Since November 2002, plaintiff has not engaged in any full-time employment or other work activity (R. 75).

### B.

Plaintiff claims disability due to a variety of conditions: arthritis of the knees and right side of her body, essential hypertension, hand pain, lupus, depression, borderline intellectual functioning, and a learning disorder. The first medical evidence in the record dates back to January 2003, before the December 17, 2003 onset of the alleged claimed disability. We will summarize the medical evidence in chronological order.

In January 2003, plaintiff went to Komed Holman Health Center, complaining of intermittent knee pain, wrist pain, and swelling (R. 106). Plaintiff had X-rays taken of her knees which revealed moderate degenerative changes with some spurring (R. 104).

On July 7, 2003, plaintiff saw Dr. Peter Biale for a consultative examination (R. 110-14). Dr. Biale noted that plaintiff complained of pain when walking, climbing, or standing, and further reported that she felt depressed and that she had a learning disability (R. 110). Dr. Biale recorded no complaints by Ms. Guilty about hand or wrist pain. Dr. Biale found that plaintiff had limited flexion in her right knee, but a full range of motion in all other joints (R. 112). Dr. Biale found that plaintiff limped when walking, but she did not need an assistive device (*Id*). However, Dr. Biale stated that plaintiff could not bear weight with her right knee, could not walk more than 50 feet without frequently holding onto the wall, and could not squat, do the heel walk, toe walk, or tandem gait (R. 112). While Ms. Guilty was able to move from a sitting to a supine position without difficulty (R. 111), Dr. Biale noted that she had difficulty getting in and out of the examination table (R. 112). Dr. Biale found plaintiff's finger grasp and hand grip to be unimpaired bilaterally (*Id.*).

Dr. Biale also found that plaintiff suffered from deficits in calculation, immediate and recent memory: she could not remember three items given to her and, according to Dr. Biale, was incapable of handling her own funds (R. 113). Dr. Biale's impressions were that plaintiff had limited motion of her right knee due to osteoarthritis, a learning disability, and depression (*Id.*).

On July 14, 2003, plaintiff saw Ms. Ellen Meyer, a licensed psychologist, for a consultative mental status examination (R. 116-19). Plaintiff reported to Ms. Meyers that she could not do clean-up work for a relative because it caused her feet to swell and her right arm to hurt (R. 116). She also said that she has pain in both arms if she lifts them into the air for a time (*Id.*). Ms. Meyer indicated

3

that plaintiff did not appear to have any motor abnormalities, but that she did seem depressed (R. 117). Ms. Meyer indicated that plaintiff cried throughout the examination (R. 117). Plaintiff was oriented, but displayed limited memory: she could recall only one of five items given to her (R. 118). Ms. Myer concluded that plaintiff's intelligence was in the borderline category (R. 118), and diagnosed plaintiff as suffering from depression and a learning disorder (*Id.*).

On August 14, 2003, a state agency psychologist, Mr. Carl Hermsmeyer, reviewed plaintiff's record (R. 120-137). He found that plaintiff suffered from medically determinable mental impairments, but that they did not precisely satisfy the regulatory diagnostic criteria for depression or learning disorder (R. 125, 127). Mr. Hermsmeyer found plaintiff moderately limited in her ability to understand, remember, and carry out detailed instructions (R. 120). He further found plaintiff to have moderate difficulty in maintaining social functioning, and in maintaining concentration, persistence and pace (R. 134). Mr. Hermsmeyer concluded that plaintiff had the mental capacity to perform simple tasks (R. 122).

On March 15, 2004, plaintiff saw Dr. Rana at the request of the state agency (R. 138-40). Dr. Rana did not have any medical records available for review when he examined plaintiff (R. 138). Dr. Rana noted plaintiff's complaints of arthritis, right knee problems, and intermittent swelling and stiffness in her hands (*Id.*). She complained that the swelling in her fingers sometimes made it impossible for her to put on rings (*Id.*). Based on his physical examination, Dr. Rana found that Ms. Guilty had slight swelling of her right knee, walked without a cane and with a minimal limp, and that her gross and fine manipulation of both hands was normal (R. 140).

On March 29, 2004, Dr. Andrews, a state agency physician, completed a residual functional capacity ("RFC") evaluation of plaintiff after reviewing her record (R. 143-150). Dr. Andrews

concluded that plaintiff could lift or carry twenty pounds occasionally and ten pounds frequently, stand or walk for about six hours in an eight hour workday, sit for about six hours in an eight hour workday, and engage in unlimited pushing and pulling (R. 144). Dr. Andrews found that plaintiff could climb, balance, stoop, kneel, crouch and crawl only occasionally (R. 145), and had no limitations in manipulation (R. 146).

On August 20, 2004, another RFC form was completed by Dr. Andrews (R. 151-158). Dr. Andrews determined that plaintiff was more limited than indicated in the March 2004 RFC. Dr. Andrews found that plaintiff could lift or carry ten pounds occasionally and less than ten pounds frequently, stand or walk for at least two hours in an eight hour workday, sit for about six hours in an eight hour workday, and engage in limited pushing and pulling with the lower extremities (R. 152).

Plaintiff was also seen by Dr. Ayoade Akere from June to October of 2004. During that time, Dr. Akere noted that plaintiff's right knee was swollen and tender (R. 163). He also noted her complaints of pain, but indicated that, on one occasion, the pain had disappeared for a week when she received a shot in her knee (R. 164). He indicated that she was unable to walk and had arthritis (R. 164). Dr. Akere's notes do not refer to any hand swelling until October 2004 (R. 172).

On July 7, 2004, plaintiff was seen by Dr. Malhas, who indicated that she had degenerative arthritis in her right knee (R. 168). On November 11, 2004, Dr. Rana examined plaintiff and noted that it was his impression that plaintiff had rheumatoid arthritis and depression (R. 166-67).

## C.

The administrative hearing took place on November 1, 2005 (R. 186). At the hearing, plaintiff testified that she is unable to cook and does little cleaning, except for occasional dusting and

making her bed (R. 198, 200). Plaintiff also testified that she is able to take a shower, but she is unable to wash her hair because she experiences pain when raising her hands over her head (R. 199). Plaintiff further testified that she watches television and plays with her grandchildren (R. 200). Plaintiff does not drive, and took public transportation to the hearing (R. 205).

Plaintiff claimed that she cannot stand or sit for long periods of time without pain (R. 195), and that she has constant pain throughout her whole body (R. 201). Plaintiff further testified that she can sit and stand for about fifteen minutes at a time, but she cannot walk around the block without a cane (R. 203). Plaintiff also said that she cannot bend down or squat (R. 204). Plaintiff testified that she takes about twenty pills a day (R. 201-2) and indicated that she has not participated in physical therapy, but she has received shots in her right knee (R. 208). Plaintiff testified that she cannot write with her right hand, but she can use her right hand to pick up small items such as coins or buttons (R. 204). Plaintiff further testified that she has sensation in her right hand and can determine whether something is smooth or rough with her right hand (*Id.*).

Plaintiff testified that she sometimes feels depressed but she has not sought treatment and is not taking medication for depression because she feels this way only occasionally (R. 205-6). However, plaintiff said that she feels sorry for herself (R. 209) and that she does not have any friends (R. 212). Plaintiff also stated that she is only able to concentrate on simple tasks, such as washing the dishes (R. 212-13).

**D.**

A vocational expert ("VE"), Ms. Julie Bose, testified at plaintiff's administrative hearing. The VE offered her opinion that plaintiff's past relevant work was semi-skilled in nature (R. 214).[2] The VE testified that plaintiff did not acquire any skills from her previous employment that could be utilized in any other type of job (R. 214-15).

The ALJ posed numerous hypotheticals to the VE to determine plaintiff's RFC. The first hypothetical required the VE to assume that the individual was the same age as plaintiff and had the same educational background and work experience as plaintiff (R. 215). The ALJ asked the VE to further assume that the individual retains the RFC for sedentary work and is able to stand/walk for two hours and sit for six hours (*Id.*). The ALJ further restricted the individual to limited upper and lower body pulling and pushing, no climbing, occasional balancing, no stooping, no kneeling, no crouching, no crawling, and occasional overhead reaching (*Id.*). Based on this hypothetical, the VE opined that plaintiff would not be able to perform her past relevant work because her previous positions required light to medium exertional levels (*Id.*).

The ALJ then asked the VE whether plaintiff could perform any other jobs that exist in the regional or national economy (*Id.*). The VE gave her opinion that plaintiff could perform service and clerical occupations that existed in substantial numbers in the national economy: telephone flotation clerk (1,000-1,200 jobs), telephone research clerk (3,000 to 3,200 jobs), and telephone marketing

---

[2] Parts of the VE's testimony were labeled as inaudible and thus are missing from the transcript. As a result, it is difficult to determine what positions other than teacher's aide were considered. It is also difficult to determine what positions were light/medium in exertional level.

clerk (7,200 jobs) (R. 215-16).³ For a second hypothetical, the ALJ added the restriction that the individual could only perform simple tasks (R. 216). The VE testified that such an individual would still be able to perform all the jobs the VE had identified (R. 216). The ALJ then asked the VE to add to the hypothetical a limitation that the person could manipulate her hands only occasionally, and not frequently (*Id.*). The VE stated that all positions would be ruled out if the individual could only occasionally manipulate her hands (*Id.*).

On cross-examination by plaintiff's attorney, the VE clarified that, although some of the positions she mentioned may be deemed unskilled or semi-skilled, she only considered the number of unskilled position for each job (R. 217). The attorney then asked the VE to consider the ALJ's first two hypotheticals as supplemented by a moderate limitation on social functioning; moderate limitation on maintaining concentration, persistence and pace; moderate limitation on the ability to understand, remember, and carry out detailed instructions; and a slight limitation on the ability to understand, remember, and carry out simple instructions (*Id.*). In response, the VE testified that the moderate limitation in social functioning would eliminate all positions that the VE previously identified (R. 217-18).

E.

In her written opinion, the ALJ found that plaintiff has arthritis of the knee, depression, and bilateral hand pain and swelling (R. 15). The ALJ determined that plaintiff's impairments were severe, "but not severe enough to meet or medically equal, either singly or in combination, one of

---

³There it's a portion of the transcript labeled "inaudible" immediately after the VE gave the 7,200 number. It may be that the VE gave 7,200 jobs as a lower range, and gave a higher number as the upper range. The transcript does not disclose the upper range. However, that may help explain why the ALJ found that there were 9,000 such jobs available (R. 20).

the impairments listed in Appendix 1, Subpart P, Regulation No. 4" (*Id.*). The ALJ considered the medical evidence and found that the objective medical evidence did not support plaintiff's reported symptoms and limitations to the extent that plaintiff alleged (R. 18). Although the ALJ grouped the alleged impairments together in her analysis, we will separate them out here in an attempt to clarify the ALJ's findings.

The ALJ examined the medical records from plaintiff's visit with Dr. Biale and noted that despite limited motion of the right knee and swelling, plaintiff had a full range of motion in other joints and was able to walk without an assistive device (R. 16). The ALJ noted that plaintiff was able to move from sitting to a supine position and back up again without difficulty (*Id.*). The ALJ considered the notes relating to an x-ray taken of plaintiff's right knee where the osseous structure was found to be intact and no evidence of a joint effusion was found, but tricompartmental narrowing and medial osteophyte formation were found (*Id.*). The ALJ also noted that plaintiff had complained to Dr. Biale of right knee pain and difficulty walking, standing, climbing, and bearing weight (*Id.*). The ALJ also indicated that plaintiff complained of arthritic pain during her visit with Ms. Meyer, a licensed psychologist (*Id.*). Further, the ALJ considered Dr. Rana's notes, which reported that plaintiff claimed to have arthritis (R. 16-17). The ALJ noted that Dr. Rana found plaintiff had some swelling in her right knee, with flexion of ninety-five to one hundred degrees (R. 17). Dr. Rana also noted that plaintiff walked with a slight limp but did not require an ambulatory aid (*Id.*). Weighing the objective medical evidence more than the subjective evidence, the ALJ found that the plaintiff did have arthritis in her right knee.

In regard to plaintiff's claimed depression and mental limitations, the ALJ considered Dr. Biale's notes that plaintiff's mood was depressed during the examination, but that she was

oriented to time, person, and place (R. 16). Dr. Biale also noted that plaintiff may have a learning disability due to the fact that she could do digit recall forward but not backward (*Id.*). The ALJ also noted that Ms. Meyer indicated that plaintiff's mood was depressed and irritable (*Id.*). Ms. Meyer stated that plaintiff's attention span was withdrawn and that her overall intelligence was in the borderline category (*Id.*). However, the ALJ noted that plaintiff has never been referred for treatment, has never been prescribed prescriptions, and has never visited the hospital for her depression (R.17). In the body of her opinion, the ALJ seemed to doubt that plaintiff had suffered from depression, commenting that at the most plaintiff had experienced "some minor episodes of depressed mood" (*Id.*). However, in her findings, the ALJ squarely stated that plaintiff suffered from depression that constituted a severe impairment (R. 20). Moreover, the ALJ's analysis of plaintiff's mental limitations did not discuss the state agency finding that plaintiff was moderately limited in social functioning – a limitation that was included in one of the hypothetical questions posed to the VE.

In considering plaintiff's claim of arthritis in her hands, the ALJ noted that Drs. Biale and Rana had found that plaintiff had no difficulty with the function of her hands (R. 16-17). The ALJ observed that Dr. Akere's treatment notes of October 26, 2004 indicated that plaintiff had swelling in her hands, but noted that his treatment notes from June and July 2004 did not identify that condition (R. 17). The ALJ also found that Plaintiff's testimony about her limited use of her hands was not credible (R. 18). The ALJ explained that she allowed the plaintiff to support her testimony of taking twenty pills a day for her pain, but that plaintiff submitted records that were unsigned, from an unidentified provider, and did not name enough prescriptions to support plaintiff's twenty pills a day testimony (R. 17-18). The ALJ also noted the lack of x-rays or other objective medical

10

evidence to support plaintiff's claimed limitation on the use of her hands (R. 18). Thus, the ALJ implied that plaintiff was exaggerating about the extent of the impairment of the use of her hands given the lack of objective supporting evidence. However, as with the other impairments mentioned above (arthritis of the knee and depression), the ALJ expressly found that plaintiff suffered from bilateral arthritis in her hands that constituted a severe impairment (R. 20).

Based on the foregoing analysis, the ALJ determined that plaintiff had the RFC to perform a significant range of sedentary work (R. 19). Specifically, the ALJ found that plaintiff retained the RFC to "lift and carry over 10 pounds, stand/walk 2 hours in an 8-hour workday, sit 6 hours in an 8-hour workday, occasionally balance, and occasionally perform overhead reaching" (R. 18). Further, the plaintiff is "limited in her ability to push and pull with the upper and lower extremities; she cannot do any climbing, stooping, crouching, or crawling; and she is limited to performing simple tasks" (*Id.*). The ALJ further found that plaintiff was "moderately limited in her ability to understand, remember, and carryout detailed instructions" based on the Ms. Meyers' evaluation and a consultative mental status examination performed on July 14, 2003 (R. 18-19). Based on these limitations and the VE's testimony concerning them, the ALJ concluded that plaintiff could perform unskilled sedentary work as a telephone quotation clerk (1,000 to 1,200 jobs), telephone research clerk (3,000 to 3,200 jobs), and telemarketer (9,000 jobs) (R. 20). The ALJ did not discuss the VE's testimony that if plaintiff were moderately limited in social function, as the state agency found, that plaintiff could not perform any of those jobs. Nor did the ALJ discuss the VE's testimony that plaintiff could not perform those jobs if she could manipulate her hands only occasionally – despite finding that plaintiff's bilateral hand arthritis was a severe impairment.

## II.

In order to establish a "disability" under the Social Security Act (the "Act"), a claimant must show "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423 (d)(1)(A) (2004). A claimant must demonstrate that his impairments prevent him from performing not only his past work, but also any other work that exists in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A). The social security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520 (2004). Under this test, the ALJ must consider: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) whether the claimant is unable to perform his past relevant work; and (5) whether the claimant is unable to perform any other work existing in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *see also Young v. Sec'y of Health and Human Services*, 957 F.2d 386, 389 (7th Cir. 1992).

A finding of disability requires an affirmative answer at either Step 3 or Step 5. A negative answer at any step other than Step 3 precludes a finding of disability. *Young*, 957 F.2d at 389. The claimant bears the burden of proof at Steps 1 through 4. *Id.* At Step 5, the burden of proof shifts to the Commissioner.

In reviewing the Commissioner's (here the ALJ's decision), this Court may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Herron*

v. *Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). This Court must accept the findings of fact that are supported by "substantial evidence," 42 U.S.C. § 405(g) (2004), which is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Herron*, 19 F.3d at 333 (quotations omitted). Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls on the Commissioner (or the ALJ), not the courts. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). *See also Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989) (the ALJ has the authority to assess medical evidence and give greater weight to that which the ALJ finds more credible). The Court is limited to determining whether the Commissioner's (or ALJ's) final decision is supported by substantial evidence and based on proper legal criteria. *Ehrhart v. Sec'y of Health and Human Services*, 969 F.2d 534, 538 (7th Cir. 1992). A finding may be supported by substantial evidence even if a reviewing court might have reached a different conclusion. *See Delgado v. Bowen*, 782 F.2d 79, 83 (7th Cir. 1986) (per curiam).

However, the Commissioner (or ALJ) is not entitled to unlimited judicial deference. The ALJ must consider all relevant evidence and may not select and discuss only that evidence which favors his or her ultimate conclusion. *See Herron*, 19 F.3d at 333. Although the ALJ need not evaluate in writing every piece of evidence in the record, the ALJ's analysis must be articulated at some minimal level and must state the reasons for "accepting or rejecting entire lines of evidence." *Id. See also Young*, 957 F.2d at 393 (ALJ must articulate reason for rejecting evidence "within reasonable limits" if there is to be meaningful appellate review). Further, the ALJ's written decision must provide a "logical bridge from the evidence to [the] conclusion" that allows the Court a "glimpse into the reasoning behind [the] decision to deny benefits." *See, e.g., Zurawski v. Halter*, 245 F.3d 881, 887, 889 (7th Cir. 2001) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

In making credibility determinations, the ALJ is required both by case law and the regulations to minimally articulate the specific reasons for the credibility finding. *Zurawski*, 245 F.3d at 887. Specific reasons are required to enable the Court to ultimately assess whether the ALJ's determination was supported by substantial evidence, or, if not, was "patently wrong." *Id.* (quoting *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000)).

Even where an ALJ makes an error in the course of reaching a decision, that decision will not be overturned if the correction of the error could not change the outcome. *Newell v. Dir., Office of Workers' Compensation Programs*, 933 F.2d 510, 512 (7th Cir. 1991). If the ALJ did not provide sufficient reasoning for her decision, but there was a lack of medical evidence to support the claim, then that error was harmless. *See, e.g., Collins v. Old Ben Coal Co.*, 861 F.2d 481, 489 (7th Cir. 1988). The Seventh Circuit has explained that a remand in such a case would be both futile and costly. *Newell*, 933 F.3d at 512.

### III.

At Step 5 of the sequential determination, the ALJ determined that plaintiff was not disabled because she had the residual functional capacity to perform a substantial number of jobs existing within the national economy, namely the jobs of telephone quotation clerk (1,000 to 1,200 jobs), telephone research clerk (3,000 to 3,200 jobs), and telemarketer (9,000 jobs). Plaintiff challenges the ALJ's determination on three grounds. *First*, she argues that the ALJ failed to properly evaluate plaintiff's residual functional capacity. *Second*, she argues that the ALJ made an erroneous Step 5 finding by failing to properly assess the combination of plaintiff's impairments. *Third*, she argues that the ALJ made an erroneous credibility finding by ignoring plaintiff's subjective complaints of

pain, in violation of SSR 96-7p. We begin our analysis with plaintiff's second argument, which we find dispositive.

A.

In this case, the VE was asked by the ALJ and plaintiff's counsel to express opinions on available work based on the various hypotheticals discussed above. The fundamental problem with the ALJ's determination is that both in the body of her ruling (R. 19-20) and in her findings (R. 20-21), she only addressed the VE's testimony in response to the second hypothetical, and disregarded the others without sufficient explanation. The Seventh Circuit has held that "[a]n ALJ may not simply select and discuss only that evidence which favors his ultimate conclusion. Rather, an ALJ's decision must be based upon consideration of all the relevant evidence." *Smith v. Apfel*, 231 F.3d 433, 438 (7th Cir. 2000). This is especially true at Step 5 where the ALJ solicits the opinion of a VE and then ignores it without explanation. *See, e.g., Griffin v. Massanari*, 2001 WL 1064476, *10 (N.D. Ill. Sept. 13, 2001) (where the ALJ "elicited the testimony of a vocational expert, the ALJ was not entitled to simply ignore significant portions of it").

The ALJ did not address the variation on the second hypothetical that was posed by plaintiff's counsel, which added the further restriction of moderate limitations in social functioning. There was medical evidence to support plaintiff's modification of the hypothetical: the state agency's psychologist, Mr. Hermsmeyer, reported on August 14, 2003 that, among other things, Ms. Guilty had moderate difficulty in maintaining social functioning (R. 134). The ALJ discussed that report, and indicated her agreement that Ms. Guilty was moderately limited in her ability to understand, remember, and carry out detailed instructions (R. 18-19). The ALJ did not discuss, and certainly did not expressly reject, the related state agency finding of moderate difficulty in maintaining social

15

functioning. The ALJ's opinion failed to provide any reasoned basis for failing to consider the variation on the hypothetical posed by plaintiff's attorney.

And, that omission was a significant one. The VE testified that with that additional restriction, Ms. Guilty would not be able to perform any of the jobs that the VE had identified. For this reason alone, a remand is necessary in order for the ALJ to consider this point. If the ALJ decides to reject the state agency finding of moderate limitation in social functioning (when she accepted the other state agency findings), it would be incumbent upon her to provide an explanation for that rejection.

In addition, the ALJ herself posed a variation of the second hypothetical in which she asked whether a person with the restrictions posed in that hypothetical could perform the work identified by the VE if that person also could manipulate her hands only occasionally. Again, the VE testified that this limitation would preclude a person from performing any of the jobs that she had identified. The ALJ's opinion did not mention this variation of the hypothetical, much less explain why she rejected it.

We suspect that the ALJ may have rejected that hypothetical because she found the claim of limitations in the ability by Ms. Guilty to manipulate her hands insufficiently supported by the evidence. There was evidence that Ms. Guilty complained about swelling in her hands (R. 138), and that Dr. Akere observed that she suffered from swelling in her hands during a visit in October 2004 (R. 172). On the other hand, as the ALJ noted, Dr. Akere's reports from June and July 2004 do not report hand swelling (R. 17), and other reports indicated that Ms. Guilty was not limited in her ability to manipulate her hands (R. 140, 146). However, in the face of that conflicting evidence, the ALJ made the specific finding that "claimant's arthritis of the knees *and bilateral hands*, and depression

16

are considered 'severe' (R. 20, Finding No. 2) (emphasis added). In the face of her finding that Ms. Guilty suffered a severe impairment in her hands, the ALJ was not at liberty to disregard her own hypothetical asking the VE whether plaintiff's ability to manipulate her hands only occasionally would affect the jobs available to her. And, as the VE's response to that hypothetical demonstrates, the ALJ's error is not merely technical but could affect the outcome of Ms. Guilty's claim: the VE said that with this restriction, there would be no jobs that Ms. Guilty could perform in the national economy. For this additional reason, a remand is required.

## B.

As a result of our decision to remand the case for the foregoing reasons, we need not address plaintiff's numerous other arguments in support of remand. However, before closing, we make the following observations for the ALJ's consideration while the matter is on remand.

*First*, while the ALJ found that plaintiff suffered from depression that is severe under the regulations (R. 20, Finding No. 2), we find no explanation of how the ALJ took that factor into consideration in reaching her decision. There was no hypothetical asking how depression would affect plaintiff's ability to perform the jobs identified by the VE. If the ALJ attempted to address that impairment by limiting plaintiff to the ability to perform "simple tasks," the ALJ did not explain that that was what she was doing; nor is it evident how limiting a person to simple tasks would address depression problems. This is a point that merits the ALJ's further consideration on remand.

*Second*, we note that the ALJ appeared to accept, uncritically, the VE's testimony about what jobs a person with the limitations set forth in the second hypothetical could perform. The Seventh Circuit has held that "SSR 00-4p requires an ALJ who takes testimony from a vocational expert about their requirements of a particular job to determine whether that testimony is consistent with

the Dictionary of Occupational Titles." *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006). Here, the requirements for a telephone research clerk are not found in that Dictionary, and a similar job is not cited. The VE never explained how she arrived at the conclusion that the VE was correct that a person with the limitations described in the hypothetical could perform this job. The ALJ should address this point on remand.[4]

## CONCLUSION

For the foregoing reasons, plaintiff's motion for remand (doc. #19) is granted; and defendant's motion for summary judgment (doc. # 30) is denied. The Court reverses and remands this case to the ALJ for further proceedings consistent with this opinion. This case is terminated.

ENTER:

SIDNEY I. SCHENKIER
**United States Magistrate Judge**

**Dated: April 4, 2007**

---

[4] In a similar vein, there was some ambiguity in the Dictionary descriptions of the jobs of telemarketer and telephone quotation clerk that the ALJ did not resolve or reconcile with the VE's testimony. The ALJ's hypothetical included the limitation of only occasional overhead reaching (R. 215). However, it is unclear whether the telemarketer and telephone quotation clerk positions require more than occasional overhead reaching. It is the responsibility of the ALJ to resolve any of these kinds of ambiguities. *Prochaska*, 454 F.3d at 735.